## No. A-CV-26-84

# Supreme Court of the Navajo Nation

**In the Matter of the Estate of:**
**Charley Nez Wauneka Sr.**
Decided March 7, 1986

## OPINION

*Before Neswood, Acting Chief Justice, Bluehouse and Austin, Associate Justices.*

*Lawrence A. Ruzow, Esq., Window Rock, Arizona for the Appellant and Samuel Pete, Esq., Window Rock, Arizona for the Appellee.*

*Opinion delivered by Austin, Associate Justice.*

Ben Wauneka Sr., administrator of the estate, appeals the denial of his claim against Dennis Williams for unauthorized use of estate farmland. Ben Wauneka Sr., as an heir, also appeals the judgment which distributed the farmland to the heirs in equal parcels.

Charley Nez Wauneka Sr., died intestate on January 10, 1979. There is no surviving spouse. In his Final Report and Proposed Distribution, Ben Wauneka Sr., the eldest son, proposed that the entire farmland consisting of 10.8 acres be awarded to him. Objections to the proposed distribution of the farmland were filed by the opposing heirs (Eunice Wauneka, Lucille W. Hunt, Charley Wauneka Jr.) and by Dennis Williams. Dennis Williams is not an heir. Opposing heirs are all children of the decedent.

Both objections alleged that Dennis Williams had purchased the farmland from the decedent. In an earlier *de novo* decision the Court of Appeals had rejected the purchase argument and ruled that the farmland was estate property. *Wauneka Sr. v. Williams,* A-CV-26-81. Opposing heirs subsequently amended their objection to request equal distribution of the farmland.

In *Wauneka Sr.* the court entered the following judgments:

6. Dennis Williams shall be entitled to cut the alfalfa growing on the Land in question as of the date of the trial do [sic] novo and to bale and take such hay from the Land.

7. Other than cutting and taking the alfalfa growing on the Land in September, 1983, Dennis Williams shall make no other or further use of the Land in question.

The District Court interpreted these judgments as recognizing Dennis Williams's use and occupancy of the farmland and denied the administrator's claim for unauthorized use. WR-CV-553-83. Order entered September 24, 1984.

We now reverse the denial of the administrator's claim. The administrator is the proper representative of the estate and where the estate's interest is involved he may sue and be sued. *In re Balke's Estate,* 68 Ariz. 373, 206 P. 2d 732 (1949); *Estate of McCabe,* 11 Ariz. App. 555, 466 P. 2d 774 (1970); *Estate of Balcomb,* 114 Ariz. 519, 562 P. 2d 399 (1977). The administrator's primary duty is marshalling the assets of the estate. See *Estate of Tamer,* 20 Ariz. 228, 197 P. 643 (1919); *Estate of Engbrock,* 90 N.M. 492, 565 P. 2d 662 (1977).

Ben Wauneka Sr.'s duty as administrator requires that he maintain all necessary actions to recover property of the estate. See *Bodine v. Stinson,* 85 Nev. 657, 461 P. 2d 868 (1969). This includes suits against unauthorized users of the estate property. In *Wauneka Sr.* it has been determined that Dennis Williams was without proper authority to use and occupy the farmland except for the 1983 season.

The District Court erroneously concluded that judgments 6 and 7, in *Wauneka Sr.,* precluded all of the administrator's claim. We now clarify *Wauneka Sr.* to hold that Dennis Williams's use and occupancy of the farmland was legitimate for only the 1983 alfalfa season. Dennis Williams's other uses were not recognized in *Wauneka Sr.* and they are properly included in the administrator's claim.

It is obvious the Court in *Wauneka Sr.* justified its ruling by its desire to prevent crop waste for the 1983 season. That court, sitting *de novo,* possessed the evidence to justify its ruling so we will not disturb its wisdom, absent clear abuse of discretion.

We are without the benefit of Dennis Williams's brief and arguments opposing the administrator's claim. Dennis Williams failed to oppose the appeal despite notice to his counsel. Opposing heirs touched on points of Dennis Williams's case but we believe opposing heirs lack standing to assert Dennis Williams's defenses. See generally *Halona v. MacDonald,* 1 Nav. R. 189, 197, 198 (1978), (quoting *Flast v. Cohen,* 392 U.S. 83 [1968]). We presume Dennis Williams does not oppose the administrator's contentions on appeal. Cf. *Estate of Goldtooth,* 3 Nav. R. 48 (1981), (intervenor did not appear in person or through counsel on appeal and court grants opposing party relief).

Ben Wauneka Sr., as an heir, first contends that the District Court erred in distributing 10.8 acres of farmland to the heirs in equal parcels. Ben Wauneka Sr. argues that he should be awarded the entire farmland under the doctrine of equitable distribution. Alternatively, Ben Wauneka Sr. contends that the farmland as distributed by the District Court is unequal on its face. He argues that the parcel awarded to him is undeveloped, contains the roughest area, and it does not have the grazing capacity nor the production potential as the other parcels. We hold for equitable distribution therefore we do not reach the merits on the second claim.

In *Wauneka Sr. v. Williams,* A-CV-26-81, the Court of Appeals sitting *de novo* found that none of the parties, including the decedent, had a valid permit granting them the right to use and occupy the farmland. However, the Court found that the decedent held the use rights to the land through a lifetime of continuous and exclusive use.

The land is substantially improved. It is fenced and at least 7.6 acres has been continuously used for growing alfalfa since 1969. The other 3.2 acres, denoted "not in use," is used primarily for pasturing cattle. A small creek, which we presume is used for irrigation, crosses the land lengthwise. The land was surveyed and plotted on a map by the Bureau of Indian Affairs in 1979. It is unclear why a permit was not issued.

The Courts of the Navajo Nation have the authority to probate the unrestricted property of a decedent. 7 N.T.C. § 253 (c). The question arises as to whether the property in this case falls into the category of unrestricted property. Restricted property, we believe, includes reservation land for which the Navajo Nation holds title for the common use and equal benefit of all tribal members. See *United States v. Jim,* 409 U.S. 80 (1972); *Mashpee Tribe v. Watt,* 542 F. Supp. 797 (D. Mass. 1982), aff'd, 707 F. 2d 23 (1st Cir. 1983), cert., denied, 104 S. Ct. 555 (1983). Unrestricted property includes property owned by individuals, and for which the Navajo Nation does not hold title for all tribal members.

Land use on the Navajo Reservation is unique and unlike private ownership of land off the reservation. While individual tribal members do not own land similar to off reservation, there exists a possessory use interest in land which we recognize as customary usage. An individual normally confines his use and occupancy of land to an area traditionally inhabited by his ancestors. This is the customary use area concept.

The Navajo Tribal Council has recognized that customary usage is a property right for which compensation is available if diminished by the sovereign. 16 N.T.C. § 1402, CJA-18-60. In *Dennison v. Tucson Gas and Electric Company,* 1 Nav. R. 95 (1974), the Court recognized customary usage as a property right protected by the Navajo Bill of Rights and the Indian Civil Rights Act, 25 U.S.C. §1301 *et seq.* (1968). Customary usage is therefore viewed as a property interest by the Navajo Nation.

*Wauneka Sr. v. Williams,* A-CV-26-81, found that the decedent exercised continuous and exclusive possessory use of the land during his lifetime. The decedent's use was never disputed by either the sovereign, the Bureau of Indian Affairs, or other land users from the immediate area. It is clear then that the decedent possessed a recognized property interest in the farmland. The farmland is fenced and readily ascertainable. We hold that this customary use area and the improvements incident can pass as property under our laws of succession.

Under our rules Navajo custom, if proven, controls the distribution of intestate property. Custom takes priority even if it conflicts with our rules of probate. Navajo Rules of Probate Procedure, Rule 10; See *Johnson v. Johnson,* 3 Nav. R. 9 (1980); *Apache v. Republic National Life Insurance,* 3 Nav. R. 250 (W.R.D.C. 1982).

Ben Wauneka Sr. argues that he proved custom in the Blue Canyon area at the trial *de novo* through the undisputed testimony of a well known medicineman. In his brief, Ben Wauneka Sr. states: "It is the custom in this area of the Navajo Nation for the eldest son to inherit land." Brief for Appellant at 6. However, a brief statement without further elaboration is not overly persuasive. We consider this custom as only one factor in our decision.

Customary law has been frequently used by our courts to determine allocation of property. The customary trust is an excellent device to use in property distribution cases involving permits and land. The customary trust is a unique Navajo innovation which requires the appointment of a trustee to hold the productive property for the benefit of the family unit. See *Matter of the Trust of Benally,* 1 Nav. R. 10 (1969); *Johnson v. Johnson,* 3 Nav. R. 9 (1980).

The customary trust is most efficient if there is cooperation and participation by all concerned. Those elements are unfortunately lacking in this case. The dissension among the heirs is counter-productive to any concept of a customary trust. The best interests of the heirs will not be served by a trust which would only be an impetus for further family discord.

The Navajo Nation has long disapproved of fragmenting agricultural and grazing lands. While our statutes specifically address permitted lands, we believe the policy is equally applicable here. At 3 N.T.C. §217 we are reminded that:

(a) Upon the death of an assignee his land use permit shall be transferred to his most logical heir as determined by the Tribal Court. The Court shall make every effort to assign the land as one unit or combine it with another. The Court should make every effort to keep the land assignment in one tract and not subdivide it.

The statutes governing inheritance of land associated with major irrigation projects and small irrigation projects contain the same language. 3 N.T.C. § 87; 3 N.T.C. § 154.

We adhere to the land policy of the Navajo Nation. We disfavor dividing up small parcels of land. The practical effect of progressive fragmentation of land results in possession of even smaller parcels by an astronomical number of heirs. The probation of allotments is a prime example of problems with fragmentation we can do without on the Navajo Reservation. (For an excellent discussion of the allotment problem, see Williams, *Too Little land, Too Many Heirs—The Indian Heirship Problem,* 46 Wash. L. Rev. 709 [1971].)

Splitting 10.8 acres of customary use land in this case results in each heir possessing a little over two and one half acres. Inevitably, progressive fragmentation decreases the usefulness of the land and the benefits derived from the land diminishes. An increase of squabbles over land use is apparent as customary users attempt to expand their use beyond their few acres. Our compliance with the Navajo land policy is made with the knowledge that opposing heirs have been awarded other equitable portions of the estate. Perhaps in the future, there will be situations which mandate contrary decisions, but we will not dwell on that here.

Every acre of land on the reservation not reserved for a special purpose is a part of someone's customary use area. Navajo history teaches us that land and livestock nourished our development as a nation. Today there are Navajo people who have devoted their entire lives to etching a living from the land. If left undisturbed these independent individuals will continue to sustain themselves from the land despite other people's need for a wage income.

It is undisputed that of all the heirs Ben Wauneka Sr. holds the best position to make proper and beneficial use of the land. Ben Wauneka Sr. is unemployed, does not have use rights to any other land, and he makes his living solely from the land in question. Ben Wauneka Sr. possesses the necessary implements to operate and maintain the farmland. Ben Wauneka Sr. has lived near the farmland all his life and he has worked the land in the past. Ben Wauneka Sr. needs the land to sustain his livelihood. We cannot say the same for the other heirs.

The opposing heirs have all expressed their intent to dispose of their parcels if awarded. Obviously the opposing heirs have no interest in farming the land. Each of the opposing heirs has been generously awarded other property of the estate. The opposing heirs are also either employed, live away from the land, or they do not possess the equipment to operate and maintain the land. The opposing heirs cannot complain that they were not well provided for.

Our decision to award Ben Wauneka Sr. this portion of the estate property is not inconsistent with our laws on property distribution. *Joe v. Joe,* 1 Nav. R. 320 (1978), dealt with the division of religious paraphernalia in a divorce action. There the Court allowed both parties to be awarded sufficient paraphernalia to perform ceremonies. Both parties had the capability

to put the items to proper use. See also *Johnson v. Johnson,* 3 Nav. R. 9 (1980); Compare *Shorty v. Shorty,* 3 Nav. R. 151 (1982). We believe Ben Wauneka Sr. is the most suitable heir who can put the land to proper and beneficial use, therefore he is awarded the farmland.

The case will be remanded to the District Court for a trial on the administrator's claim against Dennis Williams.